UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICIA COAN, CHRISTINA REPISCHAK, TERESA PRESSLY, JOYCE LITTLE, CHRISTA CHILDERS and BONNIE WILSON, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NIGHTINGALE HOME HEALTHCARE and DEV A. BRAR, personally,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO. 1:05-cv-0101-DFH-TAB<br>)<br>)<br>)<br>)<br>)<br>) |

ENTRY ON PLAINTIFFS' MOTION TO COMPEL

On September 5, 2006, the plaintiffs filed an unusual and verified motion to compel. The motion as filed sought to compel defendants to produce a tape and transcript of a meeting between *plaintiffs'* counsel and a person eligible to participate as a plaintiff in this collective action for overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207 and 216(b). Defendants have responded by providing the transcript (as part of a private investigator's report). More recently, defense counsel have advised the court and plaintiffs' counsel that a copy of the tape is being made and will be provided to them.

The remaining issue is whether the former Nightingale employee in question, Suzie Oliva, should be added as a plaintiff to the fourth and final trial group scheduled for jury trial on December 11, 2006. (In this collective action under the FLSA, the court divided the plaintiffs into four groups for purposes of trial. Two of the groups settled, and a jury trial was completed on the other group.) Oliva has not been part of the collective action prior to this point. Plaintiffs' counsel did not submit a written opt-in form for her within the deadline established by the court. Plaintiffs' motion offers a possible basis for allowing Oliva to participate even at this late date.

According to plaintiffs' motion, Oliva met with plaintiffs' attorney Nathan Foushee at his office on September 30, 2005 and was secretly carrying a tape recorder. In that meeting, she executed a form stating her desire to opt-in to the collective action. The next day, on October 1, 2005, the attorney received a one-page facsimile from the Nightingale fax number. The document seemed to be signed by Oliva and expressed her desire to withdraw from the lawsuit she had tried to join the day before. The plaintiffs' attorneys did not include her in the collective action and had no further communication with her until August 2006, when Oliva called attorney Foushee and asked about the status of the case.

Attorney Foushee has verified the motion. He reports that Oliva told him in August 2006 that she had met with him in September 2005 on the instructions of Nightingale's president, defendant Dr. Dev Brar, under threat of termination,

for the purpose of recording the conversation. Oliva told Foushee that she returned to Nightingale and gave the tape to Brar for review by him, an unidentified attorney, and a private investigator. Oliva also told Foushee that she "was distraught about her involvement in this scheme, and as a result, did not work the following day – the day the purported 'opt-out' form was faxed to Plaintiffs' counsel." Motion ¶ 6. She also said that Brar had forced her, under threat of termination, to sign some papers after the meeting with plaintiffs' counsel, and that the documents might have included the opt-out form. Oliva denied that she had willingly withdrawn from the lawsuit. Plaintiffs' motion did not include either of the documents purportedly signed by Oliva.

In response to this unusual account, defendants submitted a memorandum with an affidavit from Dr. Brar. His account is very different from the Oliva account, as reported by counsel.

Dr. Brar testified that Oliva resigned voluntarily from Nightingale on August 5, 2005, but asked him to rehire her on August 23, 2005. He did so. She told Dr. Brar that she had been contacted by the plaintiffs' attorneys and had been told "that if she joined the law suit she would recover $54,000 from Nightingale." Brar Aff. ¶ 10. According to Dr. Brar, Oliva asked him if he would like her to meet with attorney Foushee to find out how he had determined this number. He apparently agreed, and she met with an investigator to obtain a recording device.

Dr. Brar further testified that Oliva met with Foushee on September 29th (not the 30th) and came back to work the next day, when she wrote by hand an opt-out request, which she faxed to Foushee. Dr. Brar testified that Oliva's actions were voluntary and that she was never told that if she did not meet with Foushee she would be fired. Brar Aff. ¶ 20.

Dr. Brar added the further twist that Nightingale fired Oliva in July 2006 for an unspecified breach of fiduciary duty and then filed a lawsuit against her in August 2006, which offers a ready explanation for her renewed contact with plaintiffs' counsel. Defendants attached to their motion payroll records for Oliva that show her at work on Friday, September 30, 2005 and not at work on Saturday, October 1, 2005 or on Thursday, September 29, 2005. The payroll records are consistent with both sides' accounts of the events, since they provide conflicting accounts of which days the meetings occurred and the opt-out fax was sent. The court has no additional information about the separate lawsuit by Nightingale against Oliva.

Should the court allow Oliva to revoke the opt-out form and join the case as a plaintiff a month before the final trial? Assuming for the moment a view of the conflicting accounts most favorable to Oliva, the court and/or jury might find that defendants should be equitably estopped from enforcing any of the applicable deadlines against Oliva. See generally *Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) (discussing equitable estoppel as basis for

allowing late lawsuit under FLSA); *Flight Attendants Against UAL Offsett v. Commissioner of Internal Revenue*, 165 F.3d 572, 576-77 (7th Cir. 1999) (discussing equitable estoppel more generally as basis for allowing late lawsuit).

From the court's perspective, however, the key point about the different accounts of this intrigue is that the central figure, Ms. Oliva, has not offered any account of the events under an oath or under penalty of perjury. The court has before it one affidavit from a witness with firsthand knowledge of at least some of the critical events, Dr. Brar. The court also has attorney Foushee's sworn account of what Oliva told him. The court assumes that attorney Foushee has accurately reported what he heard from Oliva, but his account is hearsay as to the key facts about her contacts with Dr. Brar. Under these circumstances, the court believes the better course is not to add Oliva to the fourth trial. If she wishes to pursue her own suit separately, she may do so. If she stands by the version of events reported by attorney Foushee, she might be able to avoid statute of limitations problems based on estoppel or another equitable doctrine.

Accordingly, plaintiffs' motion to compel (Docket No. 130) is denied as moot to the extent it seeks to compel production of the tape and transcript, and denied on the merits to the extent it seeks the late addition of Suzie Oliva as a plaintiff in this action.

So ordered.

Date: November 9, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Nathan D. Foushee
MORSE FOUSHEE PC
foushee@mflawpc.com

Robert Wayne Markette Jr.
GILLILAND & CAUDILL LLP
rwm@gilliland.com

Jennifer S. Milligan
GILLILAND & CAUDILL
jsm@gilliland.com

John J. Morse
MORSE FOUSHEE PC
morse@mflawpc.com

Ronald A. Wright
WRIGHT AND ASSOCIATES PC
wrightandassoc@sbcglobal.net